# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **DENISE N. PARKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:12-cv-00615** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Pleadings.[2]  Docket No.

12.  Defendant has filed a Response, arguing that the decision of the Commissioner was

supported by substantial evidence and should be affirmed.  Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Although Plaintiff has entitled her document "Motion for Judgment on the Pleadings," the Court will construe it as a Motion for Judgment on the Administrative Record.

Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be

AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on August 19, 2008, alleging that she had

been disabled since July 24, 2008, due to a fracture of the left ankle.  Docket No. 10, Attachment

("TR"), TR 101, 109, 129.  Plaintiff's applications were denied both initially (TR 39, 41) and

upon reconsideration (TR 43, 45).  Plaintiff subsequently requested (TR 61) and received (TR

70) a hearing.  Plaintiff's hearing was conducted on October 28, 2010, by Administrative Law

Judge ("ALJ") Linda Gail Roberts.  TR 22.  Plaintiff and vocational expert ("VE"), Dr. Gordon

Doss, appeared and testified. *Id.*

On February 3, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 7-

17.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the
>     Social Security Act through June 30, 2012.
>
> 2.  The claimant has not engaged in substantial gainful activity
>     since the alleged onset date (20 CFR 404.1571 *et seq.*, and
>     416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: status
>     post left ankle fracture with open reduction internal fixation
>     and hypertension (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination
>     of impairments that meets or medically equals one of the
>     listed impairments in 20 CFR Part 404, Subpart P,
>     Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
>     416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the

undersigned finds that the claimant has the residual
functional capacity to perform the full range of medium
work as defined in 20 CFR 404.1567(c) and 416.967(c).

6.     The claimant is capable of performing past relevant work
as a caregiver/domestic and cleaner/hospital. This work
does not require the performance of work-related activities
precluded by the claimant's residual functional capacity
(20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in
the Social Security Act, from July 24, 2008, through the
date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 12-17.

On February 16, 2011, Plaintiff timely filed a request for review of the hearing decision.
TR 99. On May 5, 2012, the Appeals Council issued a letter declining to review the case (TR 1),
thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil
action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the
Commissioner's findings are supported by substantial evidence, based upon the record as a
whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and
testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the
extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of

medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age,

education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by

proving his or her "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful

activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's

age, education, and work experience, any other relevant work that exists in the national economy

in significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial
> gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which
> significantly limits his or her ability to work (a "severe"
> impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it
> must be determined whether he or she suffers from one of the
> "listed" impairments[3] or its equivalent. If a listing is met or
> equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and

nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in failing to: 1) find Plaintiff's major depressive disorder severe, and 2) accord proper weight to the opinion of nurse practitioner, Alyn Taylor. Docket No. 13 at 4.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1. Finding that Plaintiff's Major Depressive Disorder is Nonsevere

Plaintiff contends that the ALJ erred in finding that Plaintiff's major depressive disorder was nonsevere. Docket No. 13 at 5. Specifically, Plaintiff argues that, in making this determination, the ALJ must not have considered the evidence of record in its entirety because

mental health records "including CRG assessments, GAF assessments, CE findings, and a medical opinion form" support a determination that Plaintiff's mental impairments result in more than mild limitations. *Id.* at 6. Plaintiff also argues that the ALJ improperly discredited the Clinically Related Group ("CRG") assessments based on the educational level of the individuals completing the assessments and an erroneous finding that the low Global Assessment of Functioning ("GAF") scores in the CRG assessments were inconsistent with MHC records. *Id.*, *citing* TR 13. Supporting her argument that the ALJ erroneously discounted the CRG assessments because of the educational level of the people who completed those assessments, Plaintiff also notes that the CRG assessments were supported by the record, and that "20 U.S.C. § 404.1513(d) explains that sources other than 'acceptable medical sources' may be used to aide [*sic*] the ALJ in their determination of disability." *Id.*

Plaintiff notes that she had been treated "multiple times" for depression and bipolar disorder, and that she had been diagnosed with major depressive disorder by Drs. Lakhani and Doineau. *Id*. Plaintiff also argues that the ALJ used third-party statements pertaining to Plaintiff's daily activities (as well as Plaintiff's own reported daily activities) that were inconsistent with other statements made by Plaintiff, but that the ALJ did not elicit testimony at the hearing that would have clarified these inconsistencies in the extent of her activities of daily living. *Id.* at 7, *citing* TR 13-14. Finally, Plaintiff argues that the ALJ erred in using information about Plaintiff's noncompliance with keeping her appointments and taking her medication, without inquiring as to why Plaintiff was not compliant at times. *Id.* at 7-8, *citing* TR 13. Plaintiff contends, "Without attempting to determine Plaintiff's reasoning for inconsistent treatment, the fact that treatment and medication compliance may have been inconsistent cannot

be a substantial basis for finding that Plaintiff does not suffer from a severe mental impairment." *Id.* at 8.

Defendant concedes that the ALJ's finding that Plaintiff's depression is nonsevere "may be debatable," but argues that the ALJ's finding that Plaintiff's depression would not prevent working is supported by evidence of record. Docket No. 16 at 9. Defendant also notes that contrary to Plaintiff's arguments, the ALJ did discuss Plaintiff's daily activities at the hearing, and furthermore, because Plaintiff was represented by counsel at her hearing, Plaintiff had an opportunity to present evidence to support her claim, and the ALJ was "entitled to assume that [Plaintiff was] making [her] strongest case for benefits." *Id.*, *citing Glenn v. Secretary of H.H.S.*, 814 F.2d 387, 391 (7th Cir. 1987).

Defendant additionally argues that both Plaintiff's husband and son reported that Plaintiff had been working (TR 298-300), and that the CRG assessments of marked limitations were inconsistent with Plaintiff's reported activities, including working, such that even if the ALJ had found Plaintiff's depression to be a severe impairment, the evidence shows that the depression was not disabling. *Id.* at 9. Finally, Defendant asserts that Plaintiff was receiving unemployment compensation (TR 376), and that receipt of unemployment benefits is incompatible with Plaintiff's disability claim. *Id.* at 9-10, *citing Davis v. Astrue*, 2010 WL 5395692, at *9 (M.D. Tenn. 2010), TR 376.

As an initial matter, an impairment can be considered nonsevere only if it is so slight that it could not result in a finding of disability, no matter how adverse a claimant's vocational factors might be. *See, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Salmi v. Secretary of H.H.S.*, 774 F.2d 685, 691-92 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966,

971-72 (6th Cir.1985). When an ALJ finds that a claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Secretary of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987).

Discussing the severity of Plaintiff's alleged impairments, the ALJ found that Plaintiff's "status post left ankle fracture with open reduction internal fixation" and hypertension were severe impairments that had more than a minimal effect on her functioning, but that her reported vision loss and depression were nonsevere. TR 13. Because the ALJ found that Plaintiff had at least one severe impairment and proceeded to complete the sequential evaluation process, the ALJ's failure to find that Plaintiff's depression was a severe impairment cannot constitute reversible error. *Maziarz*, 837 F.2d at 244.

Although Plaintiff argues that the ALJ failed to consider the record as a whole in making the above determination, the ALJ, in fact, discussed the record at length. TR 13-14. Specifically, the ALJ addressed, *inter alia*, medical records from the Mental Health Cooperative ("MHC"), a medical source statement, a consultative opinion, and Plaintiff's subjective complaints.[4] *Id.* Discussing Plaintiff's treatment at MHC, the ALJ stated:

> She began mental health treatment at Mental Health Cooperative (MHC) on December 5, 2008, and was diagnosed with major depressive disorder. (Ex. 7F). She receives case management services and medication management from a variety of providers. MHC records indicate that she has been largely non-compliant both with keeping appointments and with taking her medication. (Ex. 7F, 9F, 12F). Clinically related group (CRG) assessments which assign the claimant low global assessment of functioning

---

[4] The ALJ's consideration of the medical source statement and consultative opinion will be discussed in the second statement of error below.

(GAF) scores are not consistent with MHC's own records and were completed by bachelor's level case managers rather than by acceptable medical sources. (Ex. 7F, 9F).

TR 13, *citing* TR 242-342, 345-73, 390-94.

The ALJ also considered Plaintiff's subjective statements, explicitly noting observed inconsistencies:

> In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant alleges that she has trouble getting out of bed and lack [*sic*] motivation to perform chores. In contrast, case management notes document over an extended period of time that the claimant's home is "neat and orderly" and that the claimant is "well-groomed with clean clothes." (Ex. 7F, 9F). On one occasion the claimant complained to the case manager during a home visit that "she does everything around the house and they are all lazy" referring to her husband and children (Ex. 7F, p. 67). The claimant has four children, including two small children, whom she cares for. She prepares simple meals, does housework, and does laundry (Ex. 10F).
>
> The next functional area is social functioning. In this area, the claimant has mild limitation. She alleges that she does not like to go out into public because she feels that people are staring at her or judging her. She does not appear, however, to have difficulty getting along with people. Case management notes state frequently that she socializes with family and friends and receives emotional support from them. (Ex. 7F). She uses the computer at the public library to look for jobs online, and goes to charitable organizations to seek assistance. (Ex. 7F, p. 78; 10F). She drives, attends church, and grocery shops. (Ex. 10F). As discussed above, she maintained employment for at least five months and possibly as much as eight months during the relevant period.
>
> The third functional area is concentration, persistence or pace. In

this area, the claimant has mild limitation. She alleges that she has difficulty concentrating and leaves forgets [*sic*] about things on the stove when she cooks. (Ex. 10F). One of her hobbies, however, is reading books and magazines, and she helps her children with their homework. (Ex. 10F). As discussed above, she uses a computer to search and apply for employment.

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. The claimant has never received inpatient mental health treatment and has never attempted suicide according to the record.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

TR 13-14, *citing* TR 242-342, 345-73, 374-82.

Additionally, the ALJ addressed Plaintiff's major depressive disorder at the hearing:

Q      Now, are you dealing with anything else physically besides your ankle that you go to a doctor for?

A      I'm having depression. I got depression.

Q      And who do you go to for that?

A      I'm with Mental Health Coop.

Q      And how long have you been going to them?

A      I guess last year.

Q      How often are you going? So is it just in 2010, not in 2008, 2009?

A      Yes, 2009.

Q      Okay. All right. Now the records at 7F say December 5th of 2008 through March 31st of this year. Are you still going to them?

> A       Yes.
>
> Q       Okay.  All right.  How often do you go?
>
> A       Once a month for my, I go for my therapist and I have once
>         with the case doctor, once a month also.
>
> Q       Once a month to the therapist and once a month to the case
>         --
>
> A       Doctor, the doctor that I see.
>
> Q       Are you sure you see someone that's an M.D.?
>
> A       Yes.
>
> Q       Okay.  All right. . . .

TR 30-31.

Upon completion of his questioning of Plaintiff, the ALJ turned the questioning over to

Plaintiff's counsel, stating, "Counselor, take over, please."  TR 31.  Plaintiff's counsel then

proceeded to question Plaintiff as follows:

> Q       Ms. Parker, why did you start going to Mental Health
>         Cooperative in December 2008?
>
> A       I started feeling very depressed.  Reason for that my
>         situation with my ankle.  It was putting me in, I just started
>         falling into a depression because I couldn't do the things
>         that I used to do and go places that I used to go and I mean
>         I just ran into a deep depression.
>
> Q       What kinds of things have the folks at the Mental Health
>         Cooperative done to try to bring you out of that depression?
>
> A       The put me on some medication and I go, I talk to a
>         therapist and just kind of bring things out that is making me
>         feel depressed.  And just, you know, just being on the
>         medication and talking to the therapist have brought me out
>         of the gutter, making me feel la [*sic*] little better than I have
>         been since my accident.

Q    Now, I'm reviewing your records from 2010 from Mental Health Cooperative and there's some reference to depression of the severity, it's so bad that you're having difficulty getting out of bed in the morning. Is that, is that still a good description of your situation?

A    Yes, it is. I just feel like I just, you know, just, I don't feel like I can do the things that I used to do which I know I can't and I just don't want to get out of the bed to face, to face society because I just feel like, you know, I can't do the things that I used to do and be with my kids and do things like I used to do with them.

Q    How often do you feel so bad that you can't get out of bed?

A    It's practically, you know, I have to force myself to get up. Mainly I get up because the kids force me to do things.  I have a little girl and a little boy that I really have to get up and do things for so, you know, I try to motivate myself to get up because I have to do things for them.  They help me but, you know, I get up because I have to get them ready and I have to cook, cook for them.  I have to do housework and things like that so, you know, I, I just have to push myself out of the bed and stuff and try to stay awake and, and, be more depressed than I am.

Q    How often do you get out of your house? There's seven days in a week. How many days will you feel well enough to leave and go somewhere?

A    I might go out like, probably out of a week, about three days to go to the store if I have to get something. Sometimes my boys go for me. I go like to get the grocery. I go to the mailbox every now and then to try to get out and get some air, to motivate myself to come out of my room. But as far as just getting out, sometime I sit on the porch. My little girl pulls me out to sit with her and watch her. She says momma, I need to get out and do things.

TR 31-32.

The ALJ further addressed the limiting effects of major depressive disorder when

questioning the VE:

> Q       All right. Same hypothetical question for hypothetical two.
> I would like to use 4F again and to that mentally I would
> like to add claimant has marked limitations with regard to
> the following domains of functioning; activities of daily
> living, social functioning, concentration, persistence, and
> pace; and adaptation, okay, based from the Exhibit 7F.
> Based on that, could this lady return to her past work or
> any other jobs in the U.S. or state or Tennessee?
>
> A       Your Honor, a person limited to that degree principally
> because of psychological factors would not be able to work
> on a sustained basis.

TR 37.

As has been demonstrated, the ALJ considered Plaintiff's major depressive disorder at

length and based her decision on a myriad of factors. TR 12-17. As can be seen in the quoted

passages above and will be discussed in greater detail in the statement of error below, the ALJ

not only considered Plaintiff's subjective complaints, but also discussed the medical and

testimonial evidence of record as well. *Id.* Both the ALJ and Plaintiff's counsel addressed

Plaintiff's major depressive disorder at the hearing. TR 30-32. The ALJ ultimately found that

Plaintiff had only mild limitations in her activities of daily living, social functioning, and

concentration, persistence or pace, and that she had experienced no episodes of decompensation.

TR 13-14. The ALJ considered the inconsistencies in the record between, *inter alia*, the low

GAF scores in the CRG assessments and MHC's medical records, and between Plaintiff's

testimony and the medical records. *Id.* Contrary to Plaintiff's assertions, the ALJ did not

"improperly discredit" the CRG assessments that assigned Plaintiff low GAF scores because of

the educational level of the individuals who completed them, but rather, discredited them

because of their inconsistencies with the evidence. *Id.* While Plaintiff is correct that the ALJ did

not attempt to ascertain why Plaintiff failed to attend her appointments and take her medication as prescribed, as has been demonstrated, Plaintiff's non-compliance was only one factor in the ALJ's well-reasoned decision; it therefore does not warrant remand.

Although the nonseverity step of the sequential evaluation process has been described as an administrative convenience for screening out totally groundless claims (*Farris v. Secretary of H.H.S.*, 773 F.2d 85 (1985)), and Plaintiff's depression in this case could have been found to be severe, the ALJ's determination that Plaintiff's depression was nonsevere does not constitute reversible error or require remand because the ALJ found that Plaintiff had at least one severe impairment ("status post left ankle fracture with open reduction internal fixation" and hypertension), proceeded to complete the requisite sequential evaluation process, considered the medical and testimonial evidence of record, reached a reasoned decision, and articulated the basis for that decision. *See Maziarz v. Secretary of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987). Accordingly, Plaintiff's argument fails.

## 2. Weight Accorded Opinion of Alyn Taylor, APN

Plaintiff maintains that the ALJ erred in failing to accord weight to the opinion of Ms. Alyn Taylor, APN. Docket No. 13 at 8. Specifically, Plaintiff argues that ALJ's evaluation of Nurse Taylor's opinion was inconsistent with 20 C.F.R § 404.1527(d), SSR 06-03p, and SSR 96-7p. *Id.* at 8-9. Plaintiff argues that unless the opinion of a treating physician is given controlling weight: (1) the ALJ must consider every opinion evidence of record; (2) opinions of nurse practitioners are important, and, although Plaintiff admittedly is not an "acceptable medical source," her opinion as a nurse must still be considered; and (3) "'[a]n individual may receive treatment at a clinic and see different physicians, but the clinic records may still show a

longitudinal history of complaints and attempts at relief.'" *Id.* at 8, *citing* 20 C.F.R. § 404.1527(d), SSR 06-03p, *quoting* SSR 96-7p. Plaintiff also argues that, although Nurse Taylor was not Plaintiff's "primary care provider throughout her three year treatment from MHC, the records from other providers at MHC support her medical opinion form."[5] *Id.* at 9. Plaintiff contends that, had the ALJ "properly evaluated" Nurse Taylor's opinion, she "likely would have awarded more weight" to Nurse Taylor's opinion. *Id.*

Defendant responds noting that, although Nurse Taylor was not an acceptable medical source, the ALJ indeed evaluated Nurse Taylor's opinion and articulated several reasons for according it no weight. Docket No. 16 at 10. Defendant also responds that the ALJ properly noted that the record contained no evidence that Nurse Taylor had ever treated Plaintiff, and that Nurse Taylor's report contained no medical or clinical findings, a prognosis, or anything showing the basis for her opinion. *Id., referencing* 20 CFR § 404.1513(b). Defendant thus claims that Nurse Taylor's report constituted a "conclusory checklist" that need not be accorded weight. *Id.*, *referencing* TR 13, *citing Gant v. Commissioner*, 372 Fed. Appx. 582, 584 (6th Cir. 2010). Defendant notes that Nurse Taylor left several areas of her report blank; namely, the length and number of treatments, nature of relationship, medical records, and the basis for her assertions that Plaintiff was unable to work. *Id.* at 11, *citing* TR 393. Defendant also notes inconsistencies between Nurse Taylor's opinion and Plaintiff's mental health treatment records, and contends that the inconsistencies and blank spaces render Nurse Taylor's report unreliable. *Id.*, *citing* TR 271, 293, 294, 296, *referencing* TR 390-94.

With regard to the evaluation of medical evidence, the Code of Federal Regulations

---

[5] Plaintiff does not, however, provide examples of such opinions. *See id.*

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> . . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a

specific amount of weight.[6]  *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."  *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.3d 431, 435 (6th Cir. 1985)).  If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 C.F.R. § 404.1502.

As an initial matter, there is no indication in the record that Nurse Taylor ever personally treated Plaintiff.  Accordingly, there is no evidence that Nurse Taylor's opinion would be

---

[6] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

entitled to the deference normally due a treating source. Additionally, Nurse Taylor, as a nurse, is not considered an acceptable medical source for purposes of such deference, but rather, is considered an "other source." The regulations provide that the ALJ may properly:

> use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -

> (1) Medical Sources not listed in paragraph (a) of this section (for example, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 C.F.R. § 404.1513(d).

Because the regulations require that all opinions be considered, the ALJ must consider Nurse Taylor's opinion, but the ALJ is not bound by conclusory statements that Plaintiff would be disabled, because the definition of disability requires consideration of both medical and vocational factors. *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

The opinion at issue is a Medical Source Statement (Mental) form completed by Nurse Taylor that indicated that Plaintiff had "fair" abilities to: perform activities of daily living independently and appropriately, free of supervision or direction; understand, remember, and carry out simple instructions; and maintain personal appearance; and that Plaintiff had "poor" abilities to do anything else. TR 391-94. Nurse Taylor's opinion references no clinical findings or evidence as support for her assertions, and instead states only: "Poor medication and appointment adherence. Frequently denies symptoms until near crisis." *Id.*

The ALJ in the case at bar discussed Nurse Taylor's opinion and ultimately determined that Nurse Taylor's opinion should be given no weight:

> A medical source statement completed by nurse practitioner Alyn Taylor, A.P.N., and dated January 13, 2011, indicates fair and poor abilities to function in numerous areas of functioning due to claimant's diagnosis of bipolar disorder and her history of "severe paranoia." (Ex. 12F). The record does not contain any notes indicating that the claimant was ever treated by Ms. Taylor personally. Additionally, Ms. Taylor is not an acceptable medical source, and her statement is not consistent with claimant's mental health treatment records. Therefore, her opinion is given no weight.

TR 13, *citing* TR 390-94.

As illustrated, the ALJ decided not to accord Nurse Taylor's opinion any weight because the record did not contain any notes indicating that Nurse Taylor had ever treated Plaintiff and because her opinion was inconsistent with Plaintiff's mental health treatment records. *Id.*

When considering the opinion evidence of record, the ALJ also discussed the opinion of Dr. Deborah Doineau, which she found to be consistent with Plaintiff's medical records. TR 13. Discussing Dr. Doineau's opinion, the ALJ stated:

> The claimant was consultatively examined on December 14, 2010, by Deborah Doineau, Ed.D., who diagnosed the claimant with major depressive disorder. (Ex. 10F). Dr. Doineau's assessment of the claimant's limitations are consistent with the record as a whole and support the finding that the claimant's mental condition is nonsevere.

*Id.*, *citing* TR 374-82.

The ALJ also referenced Dr. Doineau's consultative examination report when assessing three of Plaintiff's four broad functional areas (recounted in the first statement of error above). TR 13-14. Assessing Plaintiff's activities of daily living, the ALJ cited Dr. Doineau's assessment, as follows:

> . . . The claimant has four children, including two small children, whom she cares for. She prepares simple meals, does housework,

and does laundry. (Ex. 10F).

TR 14, *citing* TR 374-82.

Discussing Plaintiff's social functioning, the ALJ referenced Dr. Doineau's assessment

stating: "She drives, attends church, and grocery shops. (Ex. 10F)." *Id.*, *citing* TR 374-82.

Finally, addressing Plaintiff's concentration, persistence, or pace, the ALJ discussed Dr.

Doineau's report as follows:

> . . . She alleges that she has difficulty concentrating and leaves
> forgets [*sic*] about things on the stove when she cooks. (Ex. 10F).
> One of her hobbies, however, is reading books and magazines, and
> she helps her children with their homework. (Ex. 10F). . . .

*Id.*, *citing* TR 374-82.

Nurse Taylor's opinion and the opinion of Dr. Doineau conflict. When opinions are

inconsistent with each other, the final decision regarding the weight to be given to the differing

opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As demonstrated in the quoted

passages in both statements of error, the ALJ considered the record as a whole and addressed in

detail Plaintiff's medical records relating to her mental impairments. Explaining that the record

contains no evidence that Nurse Taylor actually treated Plaintiff and that her expressed opinion

was inconsistent with the evidence of record, the ALJ properly provided her rationale for

according Nurse Taylor's opinion no weight. Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for

Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be

AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge